UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13–60644-CIV-COHN/SELTZER

GERMAN YVAN SEGERSBOL,

    Plaintiff,

v.

CELEBRATION CRUISE OPERATOR, INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss and Compel Arbitration [DE 3] ("Motion to Compel"), and Plaintiff's Motion to Remand [DE 9]. The Court has considered the motions, the parties' responses and replies, the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On July 4, 2011, Plaintiff German Yvan Segersbol, a Peruvian national employed aboard the Bahamas Celebration cruise ship, fell down a stairwell on the ship and suffered cervical and lumbar spinal injuries. See DE 9-1 at 3. On February 25, 2013, Plaintiff brought suit in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida against Defendant Celebration Cruise Operator, Inc., asserting the following four claims: (1) Jones Act negligence, (2) breach of the warranty of seaworthiness, (3) failure to provide maintenance and cure, and (4) Jones Act failure to provide prompt, proper, and adequate maintenance and cure. See id. On March 19, 2013, Defendant removed the action to this Court on the basis of federal-question

jurisdiction pursuant to 28 U.S.C. § 1331.  See DE 1 at 3-4.  Specifically, Defendant's Notice of Removal [DE 1] asserts that Plaintiff's claims arise out of his employment with Defendant, and that the employment relationship is governed by the parties' Employment Agreement [DE 1-3] (the "Agreement").  The Agreement contains an Arbitration Clause (the "Clause"), signed by Plaintiff, which provides in relevant part:

### Arbitration Clause

> The parties to this contract acknowledge and agree that employment aboard the vessel under this agreement constitutes a commercial relationship between the parties.  The parties further acknowledge and agree and that any and all disputes arising out of or in connection with this agreement, including any questions as to its existence, validity or termination, or my service aboard the vessel, shall be referred to and finally resolved by arbitration pursuant to the Rules of the International Chamber of Commerce . . . .  The number of arbitrators shall be one.  The place of arbitration shall be London, England; Nassau, Bahamas; or Manila, Philippines, which ever is closer to my home.  I acknowledge and agree that any and all claims against my employer, the vessel owner, and/or operator must be arbitrated in the designated jurisdiction, to the exclusion of all other jurisdictions.

DE 1-3 at 7.  Defendant contends that the Clause is subject to the provisions of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), and its enabling legislation, 9 U.S.C. § 202, *et seq.*, and therefore that the case arises under federal law.  In its Motion to Compel, Defendant seeks to enforce the Clause and compel arbitration in Nassau, Bahamas.  In the Motion to Remand, Plaintiff argues that the Clause does not fall within the scope of the Convention.  Therefore, Plaintiff asserts, there is no basis for federal subject-matter jurisdiction and the case should be remanded to state court.

## II. LEGAL STANDARD

Pursuant to 9 U.S.C. § 201, the Convention "shall be enforced in the United States courts." 9 U.S.C. § 201. A district court has subject-matter jurisdiction over all actions or proceedings that fall under the Convention, because such proceedings are "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Moreover, any dispute pending in state court that "relates to an arbitration agreement or award falling under the Convention" may be removed to the district court for the district where the action is pending. 9 U.S.C. § 205.

The principal purpose underlying American adoption and implementation of the Convention "was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co, 417 U.S. 506, 520 n.15 (1974). In deciding a motion to compel arbitration under the Convention, a court conducts a "limited jurisdictional inquiry [that is] colored by a strong preference for arbitration." Ballesteros v. NCL (Bah.), Ltd., No. 12-24517-CIV-KING, 2013 U.S. Dist. LEXIS 19351, at *3 (Feb. 13, 2013) (quoting Bautista v. Star Cruises, 396 F.3d 1289, 1294 (11th Cir. 2005)). "[T]here is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the field of international commerce." Lindo v. NCL (Bah.), Ltd., 652 F. 3d 1257, 1275 (11th Cir. 2011) (citing, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 631 (1985)); see also Scherk, 417 U.S. at 516-17 (1974) ("A parochial refusal by the courts of one country to enforce an international arbitration agreement . . . would

3

invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages."). Under the Convention, a court must compel arbitration if the following four jurisdictional conditions are met:

> "1) there is an agreement in writing to arbitrate the dispute, 2) the agreement provides for arbitration in the territory of a signatory to the Convention, 3) the agreement to arbitrate arises out of a commercial legal relationship, and 4) there is a party to the agreement who is not an American citizen."

Doe v. Royal Carribean Cruises, Ltd., 365 F. Supp. 2d 1259, 1262 (S.D. Fla. 2005) (citing Bautista, 396 F.3d at 1294 n.7). If these conditions are satisfied, "the court must order arbitration unless it determines the agreement is null and void." Std. Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 449 (3d Cir. 2003).

### III. ANALYSIS

In this case, the parties agree that the second, third, and fourth conditions are satisfied by the Clause, and upon review of the relevant facts, the Court concurs. Therefore, the only dispute concerns whether the Clause is an 'agreement in writing' between the parties, within the meaning of the Convention. "To determine whether an award falls under the Convention, and thus, whether the district court has jurisdiction over the action to compel arbitration . . . courts look to the language of the Convention." Czarina, LLC v. W.F. Poe Syndicate, 358 F.3d 1286, 1291 (11th Cir. 2004). Article II(2) of the Convention defines 'agreement in writing,' as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, art. II(2), Dec. 29, 1970, 21 U.S.T. 2517, 330 U.N.T.S 38. Courts have held that Article II(2) generally requires either "(1) a signed contract that includes an arbitral clause, (2) a signed arbitration agreement, or (3) an exchange of

4

letters or telegrams demonstrating consent to arbitrate." Czarina, LLC v. W.F. Poe Syndicate, 254 F. Supp. 2d 1229, 1236 (M.D. Fla. 2002) (citing Kahn Lucas Lancaster, Inc. v. Lark Intern, Ltd., 186 F.3d 210, 215 (2d Cir. 1999)).  Plaintiff argues that the Clause is not part of the Agreement, and therefore that the Agreement is not a 'contract that includes an arbitral clause.'  Plaintiff further contends that neither the Clause nor the Agreement are signed by Defendant, and therefore Defendant cannot enforce the arbitration provision.  The Court will address each of these arguments in turn.

### A. The Arbitration Clause is Part of the Employment Agreement

First, Plaintiff asserts that the Clause is not part of the larger Agreement.  The Agreement together with the Clause comprise a seven-page document, with the Clause on the last page.  See DE 3-2.  Plaintiff points out that the first six pages are numbered sequentially in the top left corner as Page 1 of 6 through Page 6 of 6, while the page containing the Clause is not similarly numbered.  See id.  Additionally, the bottom right of each of the first six pages is marked "CO CO2 Rev 1."  See id.  The page that the Clause is on does not contain this notation.  Moreover, on page 5 of the Agreement, it provides for dispute resolution as follows:

> I further agree that any dispute of any nature arising out of this Contract of Employment or my employment onboard the vessel shall be governed by the Laws of the Vessel's Flag state, except as expressly provided herein and any disputes hereunder shall be adjudicated in that jurisdiction only.

Id. at 5.  Further, Plaintiff asserts, the first six pages do not mention arbitration or the Clause, and therefore, the Agreement does not incorporate the Clause by reference.

Plaintiff's argument is unavailing, as the weight of the evidence shows that the Clause was understood by the parties to be part of the Agreement.  First, as stated in

the affidavit of Defendant's Senior Executive Vice President of Finance, Edward Levitan, Defendant, acting in accordance with company policy, "instructed [ISP] to procure a seven (7) page Employment Agreement which sets forth the terms of employment and includes a provision for the resolution of claims by way of arbitration." DE 14-1 at 2.  Additionally, as noted in the Levitan declaration, the Clause and the rest of the Agreement were "executed by the parties on the same day and bearing the same date, September 15, 2010."  Id.  Most importantly, however, the Clause by its plain language includes itself as part of the Agreement.  In the second sentence, it provides that "all disputes arising out of or in connection with **this agreement** . . . shall be referred to and finally resolved by arbitration."  DE 1-3 at 7 (emphasis added).  If the term 'this agreement' referred only to the Clause, rather than to the broader Agreement, the sentence becomes nonsensical, implying that the parties had agreed to submit to arbitration *only* disputes arising under the Clause.  As the Clause creates no other obligations on the parties except to submit disputes to arbitration, such a reading would render the Clause wholly circular.  The far more sensible reading, and the one the Court adopts, is that the Clause is part of the Agreement and applies to disputes arising thereunder.

### B. The Employment Agreement Qualifies as an Agreement in Writing Signed by the Parties

Next, Plaintiff asserts that, even if the Agreement includes the Clause, the Agreement is not 'signed by the parties,' as required by the Convention.  Rather, it was signed only by Plaintiff and "INTERNATIONAL SHIPPING PARTNERS, INC., On Behalf of the Owners (As Agents Only)."  DE 3-2 at 5.  Plaintiff points out that Defendant is not

the owner of the vessel, as the vessel is owned by a company called Celebration Cruise Holdings, Inc.  See DE 9-4 at 2-3.  Thus, Plaintiff contends, Defendant is a non-signatory to the Agreement and cannot enforce the arbitration provision.  Defendant admits that it did not directly sign the agreement, but asserts that ISP was acting as Defendant's agent, as expressly stated on the first page of the Agreement:

> EMPLOYMENT AGREEMENT
> ("The Contract")
>
> Between:
>
> German Segersbol ("The Employee")
>
> and
>
> INTERNATIONAL SHIPPING PARTNERS, INC., (the "Agent") acting as agents only for:
>
> Celebration Cruise Operator, INC (Name of Company)
>
> of the vessel:
>
> Bahamas Celebration (The "Vessel").

DE 3-2 at 1.  Defendant further argues that, as the bareboat charterer, it is the owner *pro hac vice* of the vessel.  Plaintiff replies that the signature block says that ISP acted on behalf of the "owners," not the owner *pro hac vice*.

Thus, there are three issues for the Court to resolve.  First, the Court must determine whether a non-signatory to a contract containing an arbitration provision can compel arbitration against a signatory under the Convention.  If not, then the Court must decide whether the signature of an agent is sufficient to make the principal a signatory under the Convention.  Finally, if that is answered in the affirmative, it must be determined whether ISP acted as Defendant's agent in signing the Employment

Agreement.

### i. Non-Parties Cannot Compel Arbitration Under the Convention

The Middle District of Florida dealt with the first issue directly in Rolls Royce v. Royal Carribean Cruises, Ltd., No. 03-23214-CIV-LENARD, 2005 U.S. Dist. LEXIS 45416, at *21-25 (M.D. Fla. July 8, 2005).  In Rolls Royce, a cruise line entered into a contract, which contained an arbitration provision, with its shipbuilder.  2005 U.S. Dist. LEXIS 45416, at *8-11.  The cruise line filed a complaint for fraud in state court against the shipbuilder's subcontractors, who were not party to the contract between the cruise line and shipbuilder.  Id. at *11-12.  The subcontractors filed a petition in district court to compel arbitration based on the arbitration clause contained in the contract.  Id.  The subcontractors asserted federal subject-matter jurisdiction based on the Convention and its enabling act.  The court denied the petition, holding that the Convention requires that a party seeking to compel arbitration be a signatory to the contract containing the arbitration provision.  Id. at *23-25 & n.10.  In making this determination, the court relied on the holding in Czarina, 358 F.3d at1291, mandating that the court look first to the language of the Convention.  See Rolls Royce, 2005 U.S. Dist. LEXIS 45416, at *20, 25 n.10.  Because the Convention requires an agreement 'signed by the parties,' and the subcontractors had not signed the contract, the court found that they could not compel arbitration.  Id.  The Court agrees with the analysis in Rolls Royce, and will therefore proceed to determine whether Defendant is a signatory to the Agreement for purposes of the Convention.

8

### ii. The Signature of an Agent is Sufficient to Bind a Principal

Defendant claims that it is a party to the Agreement because ISP signed the Agreement as agent for Defendant. Neither party cites to binding case law on the issue of whether the signature of an agent is sufficient to bind the principal under the Convention. However, in Razo v. Nordic Empress Shipping, Ltd., No. 07-CV-05745, 2008 U.S. Dist. LEXIS 57618 (D. N.J. July 24, 2008), aff'd 362 F. App'x 243 (3d Cir. 2009), the court strongly implied that an agency relationship between a direct signatory and a third party would allow the third party to enforce arbitration in agreements governed by the Convention. In Razo, the plaintiff, an employee on a cruise ship, brought negligence claims separately against the operator and the owner of the ship. 2008 U.S. Dist. LEXIS 57618, at *6-7. The plaintiff had been hired by the operator pursuant to an employment contract containing an arbitration provision calling for all disputes to arbitrated in the Philippines. Id. at *5-6. The court ruled that, while the claims against the operator were subject to arbitration, the claims against the owner were not. Id. at *8-18. In making this determination, the court noted that the arbitration agreement was signed only by Plaintiff and the operator, and that no principal-agent relationship existed between the operator and the owner such that the owner was party to the agreement. Id. at *17 n.18. Therefore, by implication, it appears that the court in Razo recognized that an agency relationship with one of the signatories would allow the principal to compel arbitration under the Convention.

Moreover, such a finding comports with basic tenets of agency law. It is axiomatic that an agent acting on the express authority of a principal is able to commit the principal to contractual agreements with third parties. See, e.g., United States v.

9

Schaltenbrand, 930 F.2d 1554, 1560 (11th Cir. 1991) ("an essential characteristic of an agency is the power of the agent to commit his principal to business relationships with third parties") (quoting Griffin v. United States, 588 F.2d 521, 528 (5th Cir. 1979)).  The Court sees no reason why this principle should not apply with equal force in the context of the Convention.  Thus, the Court concludes that an agent's signature is sufficient to bind the principal under the meaning of the Convention.

### iii. ISP Acted as Agent for Defendant

As noted above, the Agreement in this case states that ISP entered into the contract as agents "only for" Defendant, but also that ISP signed "On Behalf of the Owners (As Agents Only)."  And, as Defendant admits, it does not own the ship in question.  Thus, there is an ambiguity on the face of the contract as to whom ISP was acting as an agent for, and the Court may look to the extrinsic evidence available on this point.  See Madsen, Sapp, Mena, Rodriguez & Co., P.A. v. Palm Beach Polo Holdings, Inc., 899 So. 2d 435, 436 (holding that extrinsic evidence is permissible to clarify an ambiguous term in a contract).  Here, the Levitan declaration unequivocally states that ISP entered into the Employment Agreement as agent for Defendant. DE 14-1 at 2.  Plaintiff submits no evidence to the contrary.  Therefore, in light of the record evidence, the Court finds that ISP entered into the Employment Agreement as agent for Defendant.  Additionally, Plaintiff signed both the Agreement and the Clause, thus evidencing his intention to be bound by their terms.  Accordingly, the Employment Agreement was 'signed by the parties,' and its Arbitration Clause is thus enforceable.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand [DE 9] is **DENIED**.

2. Defendant's Motion to Dismiss and Compel Arbitration [DE 3] is **GRANTED**. The parties are ordered to submit the claims presented in the instant action to arbitration as provided for in the Arbitration Clause of the Employment Agreement [DE 3-2].

3. Any pending motions are **DENIED as moot**. The Clerk of Court is directed to **CLOSE** this case. The Court retains jurisdiction only for the purpose of enforcing the arbitral award.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 13th day of May, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.